**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PATRICK T. SULLIVAN**<br><br>v.<br><br>**WIDENER UNIVERSITY** | **CIVIL ACTION**<br><br>**NO. 20-5614** |

**MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Baylson, J.                                                                                    **August 1, 2022**

This civil case arises from Plaintiff Patrick T. Sullivan's employment as Executive Director of Campus Safety at Defendant Widener University.  Sullivan alleges violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA") (Count I) and the Pennsylvania Human Relations Act ("PHRA") (Count II).  See Compl. (ECF 1) ¶¶ 42-45. Defendant seeks summary judgment on both claims.  See Mot. (ECF 12).  For the following reasons, Defendant's Motion will be denied.

I.    **Factual Background[1]**

A.  **Sullivan's Employment History at Widener (1992-2019)**

Sullivan first joined Widener in 1992 as the Commander of its Reserve Officer Training Corps. ("ROTC").  Pl.'s Counterstatement ¶ 2.  He briefly left Widener in 1995, before returning in 1996 to serve as its Director of Campus Safety, prior to being promoted to Executive Director of Campus Safety in 2016.  See id. at ¶ 4.  During his time at Widener, Sullivan contends that he "overhauled . . . campus security, drastically improving the safety of its students," id. at ¶ 5, and

---

[1]    Unless otherwise indicated, all facts, taken in the light most favorable to Sullivan, are derived from Widener's Statement of Undisputed Facts (ECF 13) ("Def.'s SUF"), Sullivan's related response and counterstatement (ECF 17) (respectively, "Pl.'s Resp. to Def.'s SUF" and "Pl.'s Counterstatement"), or Widener's response to Sullivan's counterstatement (ECF 19) ("Def.'s Resp. to Counterstatement").

was recognized as a "strong leader due to his knowledge of safety requirements related to compliance issues, his unmatched dedication to his job, and his professionalism when working with others," id. at ¶ 8.

Widener has a significantly different account of Sullivan's employment history. According to Widener, Sullivan did not "join[]," or otherwise become its employee, until his hiring as Director of Campus Safety in 1996. Def.'s Resp. to Counterstatement ¶¶ 2, 4. Widener disputes the extent of Sullivan's involvement in the overhaul of the campus security, see id. at ¶ 5, and, although Widener acknowledges that Sullivan was recognized by one former colleague for "professionalism, dedication, and knowledge of safety requirements," it denies Sullivan's position that he was widely recognized by colleagues for these traits, see id. at ¶ 8.

**B.  Human Resources Complaints Brought Against Sullivan (June-August 2019)**

Any concord between Widener and Sullivan disappeared beginning June 2019. Pl.'s Counterstatement ¶ 9; Def.'s Resp. to Counterstatement ¶ 9.

According to Sullivan, on June 12, 2019, his direct supervisor, Senior Vice President Joseph Baker, informed him that Widener's Human Resources Director, Allison Dougherty, had complained that he was not allowing individuals in his department to take vacation days or retire. Pl.'s Counterstatement ¶ 9. Ten days later, Sullivan learned that additional complaints had been filed, and, on June 30, 2019, Dougherty threatened to report Sullivan and his assistant to the Department of Education for a policy violation. Id. at ¶¶ 11-12. Sullivan maintains that all complaints and accusations against him were "false" and "seemingly made to push him out of his position as Executive Director of Campus Safety." Id. at ¶ 13.

According to Widener, Dougherty told Baker on June 12, 2019 that certain campus safety officers were not allowed to use vacation days. See Def.'s Resp. to Counterstatement ¶ 9. Widener

also contends that Baker notified Sullivan of complaints made by certain campus safety officers, see id. at ¶ 11, and that it received a complaint from Dougherty accusing Sullivan and his assistant of violating policy, id. at ¶ 12. Widener insists Sullivan was never reprimanded, given a written warning, or received a note in his file for any of the complaints or accusations made against him. See id. at ¶¶ 9-12. Additionally, Widener maintains that Baker informed Sullivan that "any false accusation [against Sullivan] 'was utterly ridiculous.'" Id. at ¶¶ 9-12 (citing Ex. B 56:7-24).

### C. Notice of Sullivan's Demotion (August 28, 2019)

On August 28, 2019, Baker informed Sullivan that Widener intended to hire a new Executive Director of Campus Safety and would be demoting Sullivan. See Def.'s SUF ¶ 5; Pl.'s Resp. to Def.'s SUF ¶ 5; Pl.'s Counterstatement ¶ 14; Def.'s Resp. to Pl.'s Counterstatement ¶ 14.

According to Sullivan, Baker reasoned that the demotion was because "the university [was] moving in a new direction" and Sullivan was "getting old and . . . cannot work forever." Pl.'s Counterstatement ¶ 15 (quoting Resp. Br. Ex. A, 82:5-13).

Widener disputes that Baker made these statements. See Def.'s Resp. to Counterstatement at ¶ 15. Rather, Widener maintains the decision to demote Sullivan was because it was under "intense pressure both financially as well as operationally" and "needed more of an innovator in that role [of Executive Director]—someone who was more proactive rather than reactive." Id. (citing Mot. Ex. B, 36:9-37:16 ("There were a number of examples that Pat—you know, Pat was very strong in the day-to-day, year-to-year things, and that's why I wanted to keep—I wanted to keep him on. But when it came to being proactive, to planning for future years, to being innovative in identifying both operational as well as expense efficiencies, open to change, they were not his strengths. But what he did was—I mean, was an asset to Widener.")). Widener further contends that Baker told Sullivan during the meeting that his new title would "likely" be Director, instead

of Executive Director," and his salary and benefits would remain the same.  Def.'s SUF ¶ 6.
Sullivan does not deny that Baker testified of Widener's intent to keep Sullivan's salary and
benefits the same, despite his title change, but asserts that neither his salary nor benefits decreased
because he retired prior to Widener having an opportunity to do so.  See Pl.'s Resp. to Def.'s SUF
¶¶ 6, 11-12.

### D.  Sullivan's Retirement from Widener (January 31, 2020)

One week after the August 28 meeting, Sullivan verbally informed Baker he planned to
retire.  See Def.'s SUF ¶ 7; Pl.'s Resp. to Def.'s SUF ¶ 7.  During the meeting, Baker told Sullivan
that he wished he would stay.  See Def.'s SUF ¶ 8 (citing Mot. Ex. A (Sullivan Dep. Tr.) 84:7-
85:4 & 86:12-23 ("I wish you'd stay.")).  However, according to Sullivan, he felt that his retirement
was involuntary, and that he would have continued his employment at Widener if he had not been
"forced out."  See Pl.'s Resp. to Def.'s SUF ¶¶ 9, 14-16.  Sullivan also maintains that "the
embarrassment of being replaced was a very difficult situation."  See id. at ¶ 9.

Widener insists Sullivan's retirement was voluntary.  See Def.'s SUF ¶ 9.  According to
Widener, Sullivan assisted Baker with drafting his retirement announcement to the community and
thanked Baker for throwing him a retirement party.  Id. at ¶ 14.  Moreover, Widener maintains
that, at Sullivan's exit interview, in response to being asked if he would ever return to Widener,
Sullivan "chuckled and said sure if they would have me.  I was treated very fairly."  Def.'s SUF ¶
16.  Sullivan denies that the made these comments, and, as to the retirement letter, he states that
he "cooperated" with the letter because it was forced upon him.  Pl.'s Resp. to Def.'s SUF ¶ 14.

After postponing his retirement upon Baker's request, Sullivan retired on January 31, 2020.
See Def.'s SUF ¶ 9, Pl.'s Resp. to Def.'s SUF ¶ 9-10; Pl.'s Counterstatement ¶ 19; Def.'s Resp. to

Pl.'s Counterstatement ¶ 19.  He was replaced by an individual who was decades younger than him.  See Pl.'s Counterstatement ¶ 20; Def.'s Resp. to Pl.'s Counterstatement ¶ 20.

## II.   Procedural History

Sullivan filed the instant action on November 10, 2020, alleging violations of the ADEA (Count I) and PHRA (Count II).  See Compl. ¶¶ 42-45.  Widener filed an answer on March 15, 2021.  See Ans. (ECF 5).  Following the close of discovery, Widener moved for summary judgment on March 11, 2022 seeking judgment in its favor on all claims.  See Mot. (ECF 12).  Sullivan responded on April 11, 2022, see Resp. (ECF 17), and Widener replied on April 18, 2022, see Reply (ECF 18).

On July 13, 2022, the Court held oral argument.  The parties significantly disagreed on several fact-related issues, for example:

- Widener argued that Sullivan's constructive discharge claim is based on no more than his subjective views.  Widener also asserted that Sullivan never questioned his new responsibilities or the restructuring of the campus safety department, and his demotion never came to fruition because he left prior to it going into effect.  Sullivan countered that he was the target of "false" complaints and accusations, and that, if he had remained at Widener, he would have been left in a title-only position with no job responsibilities.

- Although the parties agreed Baker told Sullivan he "wished [Sullivan] would stay," they disputed if this was an isolated remark.

- The parties disagreed whether Baker told Sullivan he was "getting old," and "could not work forever," at the August 28, 2019 meeting.  Widener argued that, even if true, it was not enough to support a constructive discharge claim.

- Widener agreed that Sullivan's demotion was in part because he was not strong in being "proactive" and "innovative in identifying both operational as well as expense efficiencies, open to change," or "planning for future years," but argued that such statements, not made to Sullivan, were alone insufficient to support constructive discharge.

- Sullivan agreed with Widener that his salary never changed following the August 28. 2019 meeting, but Sullivan reasoned it was because he remained at Widener for such a short period that it never needed to, or had an opportunity to, change his salary.  Widener claimed Sullivan's title did not change because Baker never filed the required form with human resources because Sullivan retired.

Additionally, the parties thoroughly disputed the availability of damages for Sullivan's claims, specifically if Sullivan could recover back pay, front pay, and liquidated damages; if Sullivan could recover nominal damages under the PHRA; and the extent to which Sullivan mitigated damages.

## III.   Legal Standard

Summary judgment should be granted if the moving party establishes "no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Conboy v. SBA, 992 F.3d 153, 160 (3d Cir. 2021).  A factual dispute is material if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  Summary judgment is appropriate only if "the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party." <u>Matsushita Elec. Indus. Co., Ltd. v Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

In deciding a motion for summary judgment, courts must view the record "in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." <u>In re Chocolate Confectionary Antitrust Litig.</u>, 801 F.3d 383, 396 (3d Cir. 2015). The movant must identify portions of the record that demonstrate the absence of a genuine dispute of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  If the nonmovant carries the burden of proof on an issue at trial, the moving party must show "an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325.  Once the movant meets this burden, the nonmovant must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—that demonstrate a genuine dispute. <u>See</u> Fed. R. Civ. P. 56(c)(1).  The court's role is not "to weigh the evidence and determine the truth of the matter," but "to determine whether there is a genuine issue for trial." <u>Baloga v. Pittston Area Sch. Dist.</u>, 927 F.3d 742, 752 (3d Cir. 2019) (quoting <u>Anderson</u>, 477 U.S. at 249).

## IV.   Discussion

### A.  Evaluating ADEA Claims at Summary Judgment

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. ¶ 623(a)(1).[2]  At summary judgment, if an age discrimination plaintiff relies on circumstantial evidence, courts employ a three-part burden-shifting framework. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S.

---

[2]      The PHRA is to be interpreted as identical to the ADEA. <u>See</u> <u>Fogleman v. Mercy Hosp., Inc.</u>, 283 F.3d 561, 567 (3d Cir. 2002).

792, 802-05 (1973); see also Martinez v. UPMC Susquehanna, 986 F.3d 261, 265-66 (3d Cir. 2021). First, the plaintiff must establish a prima facie case of age discrimination. See Martinez, 986 F.3d at 265 (citing Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015)). To establish a prima facie ADEA case, a plaintiff must show: (1) he is at least forty, (2) he is qualified for the job, (3) he suffered an adverse employment action, and (4) he was replaced by (or passed over in favor of) someone else "who was sufficiently younger so as to support an inference of a discriminatory motive." Id. at 266 (citing Willis, 808 F.3d at 644).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a "legitimate, nondiscriminatory explanation for its action." Martinez, 808 F.3d at 265; see Kargbo v. Phila. Corp. for Aging, 16 F. Supp. 3d 512, 522 (E.D. Pa. 2014) (Baylson, J.). The defendant need not "prove" its nondiscriminatory explanation "was the actual reason for the adverse employment action. Willis, 808 F.3d at 644. "Instead, [it] must provide evidence that will allow the factfinder to determine the decision was made for nondiscriminatory reasons." Id.

Once the defendant satisfies its burden, the plaintiff must show the "nondiscriminatory" reasons were pretext for discrimination. Martinez, 986 F.3d at 265 (citing Willis, 808 F.3d at 644). To survive summary judgment, the plaintiff

> must submit evidence which: (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a finder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); see also Sterner v. Siemans Med. Sols. USA, Inc., 706 F. App'x 772, 774 (3d Cir. 2017) (NPO) (the non-moving party must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate explanation for its actions that a reasonable factfinder could rationally find them

'unworthy of credence,'" and "the plaintiff must present 'evidence with sufficient probative force'
. . . to allow the factfinder to 'conclude by a preponderance of the evidence that age was a
motivating or determinative factor'") (quoting <u>Fuentes</u>, 32 F.3d at 765 and <u>Willis</u>, 808 F.3d at
645).

### B.  Constructive Discharge

Widener seeks summary judgment on the theory Sullivan cannot establish a <u>prima facie</u>
case because he did not suffer an adverse employment action in the form of a constructive
discharge.  <u>See</u> Mot. 10-13.

In evaluating constructive discharge claims, the Third Circuit applies an objective test that
asks "whether a reasonable jury could find that the [employer] permitted conditions so unpleasant
or difficult that a reasonable person would have felt compelled to resign," or retire.  <u>Duffy v. Paper
Magic Grp., Inc.</u>, 265 F.3d 163, 166 (3d Cir. 2001) (quoting <u>Connors v. Chrysler Financial Corp.</u>,
160 F.3d 971, 975 (3d Cir. 1998)); <u>see also</u> <u>Pa. State Police v. Suders</u>, 542 U.S. 129, 141 (2004).
<u>Lebofsky v. City of Phila.</u>, 394 F. App'x. 935, 939 (3d Cir. 2010) (NPO).  "[T]hus an employee's
subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge."
<u>Mandel v. M & Q Packaging Corp.</u>, 706 F.3d 157, 169 (3d Cir. 2013) (citing <u>Gray v. York
Newspapers, Inc.</u>, 957 F.2d 1070, 1083 (3d Cir. 1992)).

Several factors may be relevant to a finding of constructive discharge, to include whether
the employee was "threatened with discharge, encouraged to resign, demoted, subject to reduced
pay or benefits, involuntarily transferred to a less desirable position, subject to altered job
responsibilities, or given unsatisfactory job evaluations."  <u>Mandel</u>, 706 F.3d at 169-70 (citing
<u>Colwell v. Rite Aid Corp.</u>, 602 F.3d 495, 503 (3d Cir. 2010); <u>see</u> <u>Clowes v. Allegheny Valley
Hosp.</u>, 991 F.2d 1159, 1161-62 (3d Cir. 1993).  Additionally, "a reasonable employee will usually

explore . . . alternative avenues [such as requesting a transfer to another position, advising the employer that he felt compelled to resign or retire, or filing a grievance] thoroughly before coming to the conclusion that resignation is the only option." Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993). These factors are not an "absolute requirement for recovery," and the absence of any factor is not itself dispositive.  Duffy, 265 F.3d at 168.  Similarly, although an employee relying on a single discriminatory incident has a difficult road to establish an employer's liability, "the Third Circuit has declined to 'state as a broad proposition of law that a single non-trivial incident of discrimination can never be egregious enough to compel a reasonable person to resign.'"  Samuel v. Target Realty, LLC, No. 19-2203, 2021 WL 4778858, at *12 (E.D. Pa. Oct. 13, 2021) (Goldberg, J.) (quoting Levendos v. Stern Ent., 860 F.2d 1227, 1232 (3d Cir. 1988)).

### 1.  Parties' Arguments

Widener argues that there is no evidence to support Sullivan's constructive discharge theory.  Widener points to a lack of evidence concerning (1) "general policies" to force Sullivan into retirement; (2) "systemic unlawfulness" in connection with Dougherty's complaints against Sullivan, particularly given that Sullivan was never reprimanded for Dougherty's complaints and Baker testified that her accusation concerning the untimely warnings was "utterly ridiculous"; and (3) not being offered benefits consistent with a voluntary early retirement program.  Mot. 11-13. Widener also argues that Baker's so-called comments about Sullivan "getting old" and not being able to work forever, and Widener "going in [a] new direction," alone cannot support constructive discharge.  Id. at 13.  Additionally, Widener insists that Sullivan voluntarily retired, and was even encouraged him to stay at Widener, which together cannot amount to the type of intolerable conditions supporting liability under a constructive discharge theory.  Id. at 13-14.

10

Sullivan counters that summary judgment would be improper because (1) there is a genuine issue of material fact as to whether Baker's made the "getting old" and "cannot work forever" comments at the August 28, 2019 meeting, see Resp. 14; (2) if Baker did make these comments, they are probative of discrimination, see id. at 15 (citing Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3d Cir. 1997); and (3) pretext is a factual issue regarding intent that a factfinder must decide, see id. (citing Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989). Sullivan also contends that his notice of demotion amounted to an involuntary transfer to a less desirable position with altered job responsibilities and under the supervision of his much younger and less experienced replacement, and he suffered numerous false complaints and accusations prior to August 28, 2019. See id. at 8.

### 2.  Analysis

Genuine disputes of material fact exist to preclude summary judgment as to whether Sullivan suffered an adverse employment action in the form of constructive discharge. Viewing the facts in the light most favorable to Sullivan, as the Court must do at summary judgment, a reasonable jury could conclude that Sullivan felt compelled to retire.

First, in the months prior to the August 28, 2019 meeting, Sullivan was notified that he was the subject of multiple human-resources-related complaints and accusations related to his job performance. See supra Section I(C) (citing Pl.'s Counterstatement ¶¶ 9-12). Sullivan maintains that these complaints and accusations were false, and that he had never received a similar complaint in his over two decades at Widener. See id.; see also Def.'s Resp. to Pl.'s Counterstatement ¶¶ 9-12. Although Baker told Sullivan that at least of one of the accusations was "utterly ridiculous," and Widener stated that Sullivan never received a reprimand, warning, or notation in his file for any of the complaints or accusations, see Def.'s Resp. to Pl.'s Counterstatement ¶¶ 9-12, a dispute remains as to what complaints and accusations were false and

how they affected Widener's evaluation of Sullivan's job performance in the months immediately preceding his notice of demotion.  A reasonable jury, on this record, could conclude that Sullivan was subject to numerous false complaints and accusations that had a negative impact on Widener's evaluation of his job performance during the period immediately preceding its decision to demote Sullivan.  See Clowes, 991 F.2d at 1162 (noting that an unsatisfactory job evaluation can suggest constructive discharge); cf. Durando v. Trustees of the Univ. of Pa., No. 21-756, 2022 WL 2953686, at *3-5 (E.D. Pa. July 26, 2022) (Beetlestone, J.) (denying summary judgment on constructive discharge in the context of various retaliation claims, given the "facts paint the picture of a rapidly deteriorating environment," to include multiple criticisms of plaintiff's job performance).

Second, Sullivan testified that, at the August 28, 2019 meeting between him and Baker, in the context of informing Sullivan of the demotion, Baker told Sullivan that he was "getting old" and "could not work much longer," and that Widener was "moving in a new direction."  See supra Section I(C) (citing Pl.'s Counterstatement ¶ 15).  Baker adamantly disputes that he made these statements.  See Def.'s Resp. to Pl.'s Counterstatement ¶ 15.  But taking these statements as true, which the Court must do at summary judgment, a reasonable jury could find that Baker encouraged Sullivan to retire.  See Clowes, 991 F.2d at 1162 (citing an employer encouraging resignation as suggestive of constructive discharge); cf. Angelopoulos v. HDR Eng'g, Inc., No. 19-01578, 2021 WL 3056205, at *3-4, 11 (W.D. Pa. July 20, 2021) (denying summary judgment as to constructive discharge in part on the ground that he was never subjected to "age-based comments"); Jacoby v. Arkema Inc., No. 06-2339, 2007 WL 2955593, at *14 (E.D. Pa. Oct. 9, 2007) (Yohn, J.) (granting summary judgment on plaintiff's ADEA and PHRA claims on the ground that there was no genuine dispute of material fact as to constructive discharge, finding, inter alia, that the employer

never told plaintiff that "he was too old to do his job").  That Baker told Sullivan, a week after the August 28, 2019 meeting at which time Sullivan informed Baker of his intent to retire, that he wished Sullivan would stay or that Sullivan assisted with drafting his retirement letter—facts neither party disputes—do not nullify the effect of Baker's August 28, 2019 statements on Sullivan's decision that he had no choice but to retire.  See, e.g., Reply Br. 5; see supra Section I(C) (citing Def.'s SUF ¶ 5).

Widener's suggestion that Sullivan never experienced a reduction in pay or benefits, nor had his title changed, and therefore could not argue that he was involuntarily transferred to a new position, is not persuasive at summary judgment.  This argument is potentially common to any constructive discharge claim where an employee feels compelled to retire after being given a notice of demotion but leaves prior to any paperwork effectuating the change is filed.  These is potentially common to any constructive discharge claim where an employee feels compelled to retire after "being forced out," and they do not, without more, support granting summary judgment in the favor of an ADEA defendant.  See Resp. 10.

Additionally, while the test for constructive discharge is objective and does not account for Sullivan's "embarrassment" at being demoted, see Mandel, 706 F.3d at 169, the fabricated complaints and accusations, as well as Baker's August 28, 2019 statements, if true, amount to a work environment so intolerable that a reasonable person would feel compelled to resign.  Contrary to the court's finding in Abror that plaintiff's experience—to include feelings of anxiety and crying, an increased workload, poor evaluations, lack of updated equipment, and a failure to complete assignments—was not so intolerable that a reasonable person would be compelled to resign, this record suggests that Sullivan's experience was far from the "ordinary work experience

13

for millions of average citizen." <u>Abror v. Dep't of Labor & Indus. Off. of Vocational Rehabilitation</u>, No. 17-2221, 2019 WL 2716087, at *5 (M.D. Pa. June 28, 2019).

To be sure, a reasonable jury could conclude that the facts do not support Sullivan's account of the events leading to his retirement—for example, by finding that Baker never told Sullivan that He was "getting old."  But if a jury credited Sullivan's version of events based on this record, then Widener "permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to [retire]" and Sullivan suffered an adverse employment action in the form of constructive discharge.  <u>Duffy</u>, 265 F.3d at 167 (internal quotations omitted).  Thus, there are genuine disputes of material fact for a jury to resolve, hereby precluding summary judgment.

### C.  Damages

Widener argues summary judgment is proper on the ground that Sullivan has no damages. According to Widener, neither Sullivan's salary nor benefits were ever reduced, and Sullivan did not make a satisfactory attempt to mitigate damages, nor is there evidence of a willful violation supporting an award of liquidated damages.

For claims arising under the ADEA, the question of monetary liability arises after resolution on the question of fault.  <u>See</u> <u>Caufield v. Ctr. Area Sch. Dist.</u>, 133 F. App'x 4, 10 (3d Cir. 2005) (citing <u>Anastasio v. Schering Corp.</u>, 838 F.2d 701, 709 (3d Cir. 1988)).  Additionally, "[w]hether or not a claimant has met his duty to mitigate damages is a determination of fact." <u>Booker v. Taylor Milk Co., Inc.</u>, 64 F.3d 860, 864 (3d Cir. 1995); <u>see also</u> <u>Caufield</u>, 133 F. App'x at 9-10 (emphasizing that mitigation is not an essential element of an ADEA or PHRA claim, and a failure to mitigate damages "has no bearing on whether or not a claim for discrimination can be proven"); <u>Giedgowd v. Cafaro Grp., LLC</u>, No. 20-6184, 2021 WL 4963533, at *10 (E.D. Pa. Oct. 26, 2021) (Kearney, J.) ("[W]hether a plaintiff has met the duty to mitigate damages is a question

of fact, and therefore properly reserved for the jury where there is a genuine dispute of material over plaintiff's mitigation efforts.") (quoting Ngai v. Urban Outfitters, Inc., No. 19-1480, 2021 WL 1175155, at *20 (E.D. Pa. Mar. 29, 2021) (Beetlestone, J.)).  Likewise, as discussed in supra Section IV(B)(2), there are genuine disputes of material fact as to the extent of Widener's participation in the so-called false complaints and accusations brought against Sullivan in the months immediately preceding his notice of demotion, and as to whether Baker actively encouraged Sullivan to retire by making comments during the August 28, 2019 meeting about Sullivan's age.  Likewise, the availability of liquidated damages is a question of fact for a jury and premature to support a finding of summary judgment.  See Clark v. France Compressors Products, Div. of Garlock, Inc., 694 F. Supp. 112, 116-17 (E.D. Pa. 1988) (Kelly, J.); Zulauf v. Stockton Uni., No. 15-3526, 2017 WL 700111, at *11 (D.N.J. Feb. 22, 2017).

## V.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is denied.   An appropriate order follows.

O:\CIVIL 20\20-5614 Sullivan v Widener Univ\20cv5614 Memo re. MSJ.docx